UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Joan M. Quick,<br>　　　　　　　Debtor. | Bankruptcy No. 09-B-09018<br>Adversary No. 09-A-00738 |
| Hawthorne Credit Union,<br>　　　　　　　Plaintiff<br>v.<br>Joan M. Quick,<br>　　　　　　　Defendant | Chapter 7<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

The Bankruptcy Code excepts from discharge a debt for money to the extent obtained by "use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. §523(a)(2)(B). Thus, "to prevail on a claim under this section, the creditor must prove that the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor reasonably relied on the statement." Fischer Inv. Capital, Inc. v. Cohen (In re Cohen), 507 F.3d 610, 613 (7th Cir. 2007).

Ms. Quick has admitted that she executed a promissory note and loan application for a loan of $418,303.66 from Hawthorne Credit Union at Hawthorne's office on or about December 20, 2005. (Def.'s Resp. to P's Statement of Material Facts ("Def's 7056-2 Statement") ¶¶16, 17, 23, Oct. 12, 2011, ECF No. 35). Ms. Quick has also admitted that the loan application falsely stated that she earned $28,750 in monthly gross pay, that she owned certain real estate property, and that she owned $450,000 in non-residence assets. (Def's 7056-2 Statement ¶¶20-22, ECF No. 35). She further admitted that she understood that "a loan applicant's current income and other assets are factors that banks and credit unions consider when deciding whether to approve a loan application." (Def's 7056-2 Statement ¶44, ECF No. 35). Finally, she admits that Hawthorne transferred funds in amount of $418,303.66 to Ms. Quick's employer, ProSource

Motor Sports, which was listed in the loan documents as the purported seller of an RV to be secured by the loan. (Def's 7056-2 Statement ¶¶39-41, ECF No. 35).

Ms. Quick has denied that Hawthorne reasonably relied on the misrepresentations, but only denied this allegation by stating that the bank knew that payments on the loan would be made by her employer, a man named Rusty Ott. (Def's 7056-2 Statement ¶¶30-37, ECF No. 35). She admitted that she had agreed to enter into the loan in her own name after her boss told her he could not get financing for his business by himself, and asked her to take out the loan on his behalf. (Def's 7056-2 Statement ¶¶7-11, ECF No. 35). However, even if Hawthorne knew that Mr. Ott would receive the proceeds of the loan and fund the repayment of the loan, that does not mean that the bank was aware that Ms. Quick had lied about her income and assets. Nor would such fact mean that Ms. Quick's income and assets were irrelevant to the bank's decision to extend the loan. Even if Mr. Ott had expressed an intention to repay the loan, the bank had no contract with Mr. Ott and little or no way to enforce that promise against Mr. Ott if he failed to pay. Therefore, it is not unreasonable to suppose that the bank would have cared about the assets and income of the person signing and agreeing to be bound by the promissory note, and Ms. Quick admitted that she understood this to be true. Ms. Quick has offered no reason or evidence to suggest otherwise, and therefore her simple unsupported allegation that the bank knew Mr. Ott intended to fund the repayment of the loan does not create a genuine issue of material fact. See, e.g., Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010) (non-moving party to a motion for summary judgment is "required to marshal and present the court with … evidence on which a reasonable jury could rely").

Ms. Quick next notes the fact that it was her boss, Mr. Ott, who benefited from the fraud in which she participated, not her. But that is not a defense. There is no requirement in Section 523(a)(2) that the debtor must receive the proceeds of the fraudulently induced loan or must directly benefit from the loan. See, e.g., Muegler v. Bening, 413 F.3d 980, 983 (9th Cir. 2005) (noting that while in the past some courts had found that a debtor "must have received a direct or indirect benefit from his or her fraudulent activity," in light of the Supreme Court's ruling in

Cohen v. de la Cruz, 523 U.S. 213 (1998), "we should not read requirements like receipt of benefits into § 523(a)(2)(A) and ... the discharge exceptions protect fraud victims rather than debtors"); 3 Norton Bankr. L. & Prac. 3d §57:15 ("The better view is that the debtor need not personally benefit."). Courts have frequently found the obligations of co-debtors or guarantors non-dischargeable under Section 523(a)(2), even though such parties do not receive the proceeds of a loan or directly benefit, where such co-debtor or guarantor made intentional misrepresentations to induce a lender into lending money to another. See, e.g., Fieldcrest Cannon, Inc. v. Meyer (In re Meyer), No. 97-1135, 1197 WL 659832 (7th Cir. Oct. 14, 1997) (upholding bankruptcy court's finding that debtor's guarantee of debt to corporation was non-dischargeable under Section 523(a)(2)(B) because of his fraudulent misrepresentations); see also, McClellan v. Cantrell, 217 F.3d 890, 895 (7th Cir. 2000) (refusing to read into Section 523(a)(2) a requirement that "the transferor be the victim of the fraud").

Since Ms. Quick has neither asserted a valid defense nor proffered any evidence to contest Hawthorne's well-supported factual allegations, Ms. Quick has failed to identify any genuine issue of material fact. For the foregoing reasons, summary judgment will be entered in favor of Hawthorne. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: January 26, 2012

The Honorable Manuel Barbosa
United States Bankruptcy Judge